For the reasons assigned, the judgment appealed from is affirmed.

FOURNET, J., concurs in the decree.

PONDER, J., recused.

199 So. 209

**STATE ex rel. WILLIAMS v. CAGE, Judge.**

No. 35842.

June 28, 1940.

Rehearing Denied Dec. 3, 1940.

A. G. Williams, of New Orleans, in pro. per.

J. Blanc Monroe and Henry B. Curtis, both of New Orleans, for respondent.

O'NIELL, Chief Justice.

On November 18, 1939, the Honorable Hugh C. Cage, who was then judge of the Civil District Court, presiding in Division

A, reached the age of eighty years. According to the provisions of Section 8 of Article VII of the Constitution the judge was compelled to retire at that age; and having served more than twenty years, he was entitled to full pay for life. In the last paragraph of that section in the Constitution it is declared:

"Any judge retiring hereunder, or upon reaching the age of eighty years as herein provided, shall notify the Governor and the Secretary of State, in writing, of the fact of his retirement and the effective date thereof, and thereafter, the vacancy shall be filled as is now, or may hereafter be, provided by law."

Accordingly, on October 3, 1939, Judge Cage notified the Governor and the Secretary of State, in writing, that he would be eighty years of age on November 18, 1939, and would be compelled then to retire.

The term of office for which Judge Cage was elected the last time will expire at the end of this year, 1940; hence the unexpired part of the term, on November 18, 1939, was more than a year. And, if the method of filling such a vacancy is governed by the provisions of Section 69 of Article VII of the Constitution,—which the relator in this case denies,—the method prescribed was by a special election to be called by the Governor and held within sixty days after the vacancy occurred. Section 69 reads:

"Vacancies occasioned by death, resignation, or otherwise, in the office of district judge, district attorney, sheriff, or clerk of the district court, where the unexpired portion of the term is less than one year, shall be filled by appointment by the Governor, with the advice and consent of the Senate. In all cases where the unexpired portion of the term is one year, or more, the vacancy shall be filled by special election, to be called by the Governor, and held within sixty days after the occurrence of the vacancy, under the general election laws of the State."

The Governor, in his response to the notification from Judge Cage, did not say how the vacancy should be filled. The relator here interprets the Governor's letter as assuming that the provisions of Section 69 of Article VII of the Constitution required that the Governor should call a special election to fill the vacancy. The Governor did not call the election but called Judge Cage's attention to the hold-over clause in Section 6 of Article XIX of the Constitution, and requested the judge to continue to discharge the duties of the office until his successor would be inducted into office. In his letter the Governor, after paying a high tribute to the service which Judge Cage had rendered, said:

"We are now on the eve of a statewide primary election and the time is not suited for the unbiased choice of a member of the bar for a high judicial office. Therefore I do not deem it wise that your successor should be sought out at this time; but I deem it my duty to call your attention to the constitutional requirement that it is your duty to continue to function in your present office until your successor is inducted into office. That article is as follows:

" '[Article XIX] Section 6. All officers, State, municipal and parochial, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office.'

"Although you richly deserve a rest after your long years of labor in the service of the State, considering your wide experience and remarkable mental and physical vigor I feel sure that you will continue to serve the State, at least for some months to come, and I request you so to do."

Judge Cage therefore continued to discharge the duties of his office, and is discharging them yet. On March 20, 1940, at a time when the Senate was not in session, the Governor issued a commission to Augustus G. Williams, appointing him judge of the Civil District Court to succeed Judge Cage. Mr. Williams took the oath of office and then made demand upon Judge Cage for possession of the office. Judge Cage sought the advice of the New Orleans Bar Association, and was advised by the association that the Governor was without authority to make the appointment because the unexpired part of the term of office was more than a year when the vacancy occurred. Judge Cage therefore refused to surrender the office. Mr. Williams then brought this suit for possession of the office, under the statute on the subject of intrusion into office,—Act No. 102 of 1928, Dart's Statutes, sec. 7712 et seq. After a hearing of the case on its merits the judge rejected the relator's demand. He is appealing from the decision.

The appellant contends first that the hold-over clause, which is Section 6, in Article XIX of the Constitution, is not applicable to a vacancy caused by the retirement of a judge, under the provisions of Section 8 of Article VII of the Constitution. Hence the appellant contends that Judge Cage had no right to question the legality of the appointment made by the Governor, as evidenced by the commission held by the appellant. He cites the case of State ex rel. Ford v. Miltenberger, 33 La.Ann. 263, where it was held that an individual who brought suit under the intrusion-into-office statute was obliged to exhibit an apparently valid muniment of title, such as a commission from the Governor; otherwise he could not inquire into the authority by which the defendant holds the office. The converse of the proposition, of course, is that if the plaintiff or relator in such a case exhibits an apparently valid muniment of title, such as a commission from the Governor, the defendant must show his right to remain in office until a rightful successor demands possession of the office. When the defendant in such a case makes such a showing he has the right to inquire into the legality of the muniment of title exhibited by the plaintiff or relator,—even though it be a commission from the Governor,—and to require the plaintiff or relator to establish his right to be inducted into office. In State ex rel. Ford v. Miltenberger, 33 La. Ann. at pages 266, 267, it was said:

"In a proceeding under the intrusion act, by the State alone, the inquiry is: Has the defendant usurped and intruded into

the office? If he have, he is excluded and ejected from it; the office is declared vacant, and remains to be filled as provided by law. If the defendant is found not to have usurped or intruded, then he is quieted in the possession of the office, and in the exercise of his functions.

"In a proceeding under the same act, by the State, on the relation of an 'interested person,' the first inquiry is: Has the relator a muniment of title to the office held by the defendant? If he have, the court passes at the threshold upon its sufficiency and effect; and if it establish a prima facie right to the office, the next inquiry is into the right of tenure of the defendant; but if the relator have no such muniment, and if the State do not press on its own behalf an investigation, the litigation drops, the contest ends, the proceedings are to be dismissed, and the incumbent must not then be disturbed.

"It is not because an incumbent is an intruder or usurper that a relator is entitled to the office. The relator must first satisfy the court that he can fill the vacancy which he seeks to have created by the ejectment of the usurper or intruder.

"If he cannot do so, he has no interest in the proceeding, and cannot prosecute it when the State does not."

In the Miltenberger case the court was not obliged to say what would be the effect if the defendant in a case like this should fail to show his right to hold possession of the office until a rightful successor should claim it. The proceedings did not progress that far in State ex rel.

Ford v. Miltenberger because the plaintiff did not have a muniment of title, such as a commission from the Governor.

■ Our opinion is that Judge Cage had the right to continue to discharge the duties of his office while he was awaiting its being claimed by his successor. He had the right therefore to question the authority of anyone who might claim to be his successor. In Section 6 of Article XIX of the Constitution there are only two exceptions to the rule that every public officer at the end of his tenure shall continue to discharge the duties of his office until his successor is inducted into office. The only exceptions are cases of impeachment or suspension. The appellant argues that the retirement of a judge at the age of 80 years, being compulsory, should be compared with removal or suspension from office. We do not think so. Retirement is more like a resignation than like any other cause of a vacancy in office, even when the retirement is compulsory. The theory of the appellant in that respect is that when a judge reaches the age of 80 years he becomes disqualified to hold the office. It is pointed out by the appellant that the hold-over clause in Section 6 of Article XIX of the Constitution of 1921 appeared in a corresponding article in the previous Constitutions of Louisiana; whereas the retirement clause, in Section 8 of Article VII of the Constitution of 1921, was not in any previous Constitution. Hence it is argued that the framers of the hold-over clause did not intend or contemplate that it should apply to a vacancy caused by retirement.

By the same token we say that it was not contemplated that the two exceptions to the hold-over rule, namely, the case of impeachment and the case of suspension, should be construed to mean retirement from office. The theory of the appellant seems to be that when a judge reaches the age of 80 years he immediately becomes disqualified or incapacitated to discharge the duties of his office. But that is not the case. Generally speaking, a judge is not noticeably less capable of performing his judicial functions on the day after he arrives at the age of 80 years than he was on the day before. Of course, if it were declared in this section in the Constitution that a judge should be deemed incapacitated at the age of 80 years, we would be obliged to declare Judge Cage incapacitated,—just as every person is incapacitated until he arrives at the age of 21 years. But there is no such arbitrary declaration in Section 6 of Article XIX of the Constitution. The declaration is that every officer, except in cases of impeachment or suspension, shall continue to discharge the duties of his office until his successor shall have been inducted into office. That declaration is as appropriate to a judge whose tenure expires by reason of his reaching the age of eighty years as it is to a judge or any other officer whose term expires.

■ Our conclusion therefore is that Judge Cage had the right to defend against this suit the possession of the office which he held, and hence to challenge the authority which the Governor assumed in appointing a successor to Judge Cage. If

Section 69 of Article VII of the Constitution is applicable to this case the Governor had no authority to appoint a successor to Judge Cage, but should have called a special election to fill the vacancy, because the unexpired part of the term of office was more than a year when the vacancy occurred. The vacancy occurred when Judge Cage arrived at the age of eighty years, just as a vacancy occurs when a term of office expires, notwithstanding the incumbent continues to discharge the duties of the office until his successor is inducted into office. State v. Young, 137 La. 102, 68 So. 241; State v. Hargis, 179 La. 623, 154 So. 628. Section 69 of Article VII leaves no doubt that, in the cases where this section is applicable, the authority of the Governor to make an appointment to fill a vacancy is limited to cases where the unexpired part of the term of office at the time when the vacancy occurs is less than a year. If the unexpired part of the term is a year or more when the vacancy occurs, the Governor cannot acquire the right to make an appointment by failing to call an election to fill the vacancy, until a date which is less than a year before the expiration of the term of office. If a Governor could by that means acquire the right to fill a vacancy by making an appointment in a case where the unexpired part of the term is a year or more at the time when the vacancy occurs, the time limit which was put upon the power of the Governor in that respect, in Section 69 of Article VII of the Constitution, would serve no purpose.

■ The appellant contends that Section 69 of Article VII of the Constitution is

not applicable to this case, and he gives, alternatively, several reasons for the contention. In the first place he points out that the phrase "and thereafter, the vacancy shall be filled as is now, or may hereafter be, provided by law" did not appear in Section 8 of Article VII of the Constitution until it was amended in 1938, pursuant to the joint resolution which was Act No. 383 of 1938. He shows that when this section was amended in 1928, pursuant to the joint resolution which was Act No. 139 of 1928, a hold-over clause was provided, thus: "provided, all judges hereafter elected shall retire on reaching the age of seventy-five years, but such judges shall, nevertheless, continue to serve * * until their successors shall have been duly elected and qualified; such election to be held at the next general judicial or congressional election following the date when such judges shall have attained the age of seventy-five years." A similar provision was made in the amendment of 1936, according to the joint resolution which was Act No. 321 of 1936, by which the age limit was raised to eighty years. But in the amendment that was made in 1938 the hold-over clause was omitted, and this clause was substituted: "and thereafter, the vacancy shall be filled as is now, or may hereafter be, provided by law". From this it is argued that the intention was to do away with the hold-over clause so far as retired judges were concerned. There is considerable force in the argument. But we believe that the reason for the omission of the hold-over clause, in the last amendment of Section 8 of Article VII of the Constitution, is that the authors of the

amendment observed that there were three classes of judges whose retirement was provided for, even as this section was written originally, namely, justices of the supreme court, judges of the courts of appeal, and judges of the district courts. The method provided elsewhere for filling vacancies was not the same in the three classes of judgeships. Hence it was decided to omit the hold-over clause and the clause providing for the filling of the vacancy, and to allow the general provisions relating to each class of judges to apply as well to vacancies caused by retirement as to vacancies resulting from any other cause.

It is argued by the appellant that the word "law", in the phrase "as * * * may hereafter be, provided by law", means "statute". And from this it is argued that the authors of the amendment recognized that Section 69 of Article VII of the Constitution was not applicable to a vacancy caused by the retirement of a judge, and hence that the method of filling such a vacancy, even in the office of a district judge, might be provided for by statute. Our opinion, however, is that the word "law", as used in the phrase "as is now, or may hereafter be, provided by law", means either a provision in the Constitution or a valid statute on the subject. In that connection the appellant says that Act No. 21 of the Second Extra Session of 1934, giving the Governor authority to fill vacancies by making appointments, with the advice and consent of the Senate, in cases not provided for otherwise in the Constitution, does not apply to recess appointments, and therefore that the filling of a vacancy in

a case like this is provided for only in Section 12 of Article V of the Constitution. In that section it is declared that the Governor shall have the power to fill vacancies that may occur during a recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session of the Senate. The meaning of this limitation, "in cases not otherwise provided for in this Constitution", in Section 12 of Article V of the Constitution, was given, very emphatically, in State ex rel. Fernandez v. Feucht, 182 La. 134, at page 140, 161 So. 179, 181, thus:

"It is a limitation on the power of the Governor to appoint and means that he shall not have the power to appoint where it is otherwise provided for in the Constitution."

Therefore, as the filling of a vacancy in the office of a judge of a district court is otherwise provided for in Section 69 of Article VII of the Constitution, Section 12 of Article V is not applicable.

■ The appellant contends that Section 69 of Article VII of the Constitution is not applicable to a vacancy in the office of a judge of the civil district court for the Parish of Orleans. He says that the position of Section 69, in Article VII, indicates that the intention was that it should apply only to the judges of the district courts outside of the Parish of Orleans. It does seem that Sections 31 to 74 in that article of the Constitution refer to district judges, district attorneys, sheriffs, and clerks of the district courts, in the parishes other than the parish of Orleans. But in the brief for Judge Cage it is pointed out that in several of these sections where the intention is to exclude the parish of Orleans it is so declared; which indicates that where there is no express exclusion of the Parish of Orleans the section if otherwise appropriate is applicable as well to the Parish of Orleans as to any other parish in the State. For example, in Section 43 it is declared that the district courts, the civil district court and the criminal district court for the Parish of Orleans excepted, shall hold continuous sessions during ten months in each year. In Section 65 it is declared that there shall be a sheriff elected in each parish in the State, except in the Parish of Orleans, et cetera. In Section 66 it is declared that there shall be a clerk of the district court in each parish, the Parish of Orleans excepted. In Section 70 it is declared that there shall be a coroner elected by the qualified electors in each parish, except in the Parish of Orleans, et cetera. Hence it appears that some of the sections in Article VII preceding Section 75 are applicable in the Parish of Orleans, and some of these sections preceding Section 75 are declared to be not applicable to the Parish of Orleans. From this it is reasonable to assume that Section 69, which is broad enough in its terms to be applicable to the judges of the civil district court for the Parish of Orleans, is in fact applicable as well to these judges as to the judges of the district courts in the other parishes throughout the State.

We are reminded that the executive department has construed Section 69 of Article VII of the Constitution, consistently,

as being applicable to vacancies in the office of judge of the civil district court for the Parish of Orleans. During the last eighteen years five vacancies on that bench have occurred at times when the unexpired part of the term was more than a year, and in every such instance the vacancy was filled by an election. On the other hand, three instances are cited in the brief for the relator where a vacancy in the office of district attorney for the Parish of Orleans was filled by appointment by the Governor, notwithstanding the unexpired part of the term was more than a year. By the terms of Section 69 of Article VII of the Constitution, vacancies in the office of district attorney are in the same class with vacancies in the office of district judge. Hence it is argued that, if the Governor has authority to fill a vacancy in the office of district attorney for the Parish of Orleans by appointment when the unexpired part of the term is a year or more, so must he have authority to fill a vacancy in the office of judge of the civil district court for the Parish of Orleans by appointment when the unexpired part of the term is a year or more. But, in the brief for Judge Cage, it is pointed out that the opinion on which the Governors have made appointments to fill vacancies in the office of district attorney for the Parish of Orleans when the unexpired part of the term was more than a year is not appropriate to a vacancy in the office of judge of the civil district court for the Parish of Orleans. The reasoning in the case of the district attorneys is, substantially, this: In the Constitution of 1898, in Article 125, dealing with district attorneys in the parishes other than the Parish of Orleans, and in article 157, dealing with judicial offices in the Parish of Orleans, it was provided that vacancies in the office should be filled by appointment by the Governor for the unexpired part of the term. In the corresponding articles of the Constitution of 1913 the authority of the Governor to fill vacancies by appointments was limited to cases where the unexpired part of the term was less than a year. In Section 89 of Article VII of the Constitution of 1921, which section deals with the office of district attorney for the Parish of Orleans, and with other offices in the Parish of Orleans, but not with the office of judge, it is provided that "the provisions of law and of the Constitution of 1898 and 1913, as heretofore amended, relative to these officers * * *, shall, except as otherwise provided in this Constitution, continue in effect until changed by the Legislature." It is said that in that way the Legislature was given carte blanche in the matter of providing for filling vacancies in the office of district attorney for the Parish of Orleans, and that Act No. 21 of the Second Extra Session of 1934 is applicable. That reasoning is not appropriate to a vacancy in the office of judge of the civil district court for the Parish of Orleans because there is no such provision relating to that office as the provision in Section 89 of Article VII of the Constitution, relating to the office of district attorney for the Parish of Orleans.

The appellant contends finally, and alternatively, that Section 69 of Article VII of the Constitution has become obso-

lete and inoperative by the adoption of the primary law, Act No. 97 of 1922, because the delays allowed by the primary law for the qualifying of candidates, and the holding of a primary election, and, if necessary, a second primary election, are apt to exceed the sixty days allowed in Section 69 of Article VII of the Constitution for the holding of a special election. To this argument Judge Cage's answer, which we deem sufficient, is that if there is a conflict between the time limit of sixty days in Section 69 of Article VII of the Constitution and the delays which are allowed by the primary law the provisions in the Constitution must prevail.

The judgment is affirmed.